# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARY A. NEVELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 5492 |
| v. | ) | |
| | ) | Magistrate Judge |
| MICHAEL J. ASTRUE, | ) | Maria Valdez |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Mary Nevels' claim for Supplemental Security Income Benefits under title XVI of the Social Security Act. On October 26, 2007, the parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Nevels and the Commissioner have filed cross-motions for summary judgment, each pursuant to Fed. R. Civ. P. 56. For the reasons contained herein, Nevels' Motion for Summary Judgment [Doc. No. 20] is granted in part, and the Commissioner's Motion for Summary Judgment [Doc. No. 23] is denied. The Court finds that this matter should be remanded for further proceedings.

# I. PROCEDURAL HISTORY

Plaintiff Mary Nevels filed an application for supplemental social security income on June 11, 2003, alleging disability beginning April 4, 2003. (R. at 14.) The claim was denied initially on October 10, 2003, and again upon reconsideration on February 2,2004. *Id.* Nevels timely filed a written request for a hearing on March 31, 2004. *Id.* Nevels appeared and testified at the hearing held before administrative law judge ("ALJ") on April 17, 2006 and was represented by an attorney. *Id.* A medical expert and a vocational expert also testified at the hearing. *Id.* On September 20, 2006, the ALJ found that Nevels was not "disabled" within the meaning of the Social Security Act. (R. at 22.) Nevels requested a review by the Appeals Council on November 14, 2006. (R. at 10.) The Appeals Council denied Nevels' request for review on July 31, 2007, and the ALJ's decision became the "final decision" of the Commissioner under 20 C.F.R. § 404.955(a). (R. at 4-6.) Nevels subsequently initiated this civil action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

# II. FACTUAL BACKGROUND

## A. Background

Nevels was born on June 26, 1962, and was forty-three years old at the time of the hearing. (R. at 293.) She is five feet tall, and weighed 178 pounds at the time of the hearing, though her usual weight is 143 pounds. *Id.* She completed school though the 10th grade, and has no educational or vocational training beyond that.

(R. at 294.) Nevels' past relevant work includes working as a loader for UPS, a housekeeper, and a food server. (R. at 20.)

Nevels claims disability under the Act starting on April 4, 2003 due to Chronic Obstructive Pulmonary Disease ("COPD") and thrombocytosis, a myeloproliferative blood disorder that is also referred to as thrombocythemia. Memorandum in Support of Plaintiff's Motion for Summary Judgment [hereinafter Pl.'s Mem.] at 1-3 [Doc. No. 21].

**B.    Testimony and Medical Evidence**

    **1.    *Nevels' Testimony***

At the hearing, Nevels testified to frequent coughing spells and shortness of breath that she began experiencing in 2005. (R. at 305.) Nevels stated that she uses three different inhalers to help her breathe: Albuterol, Advair and Combivent. (R. at 302-03.) Nevels asserted that she has been admitted to St. Bernard and Mercy Hospitals "over four [or] five times" within the 12 months prior to the hearing due to her breathing problems, and was placed on a breathing machine at the hospitals. (R. at 306.) She said she had smoked about two packs a day over a ten-year period, but has reduced that amount to less than one-half pack per day. (R. at 335.)

Nevels also testified that she has numbness in both of her hands, with the numbness in her left hand being more severe, to the point that she is unable to pick up a gallon of milk with her left hand. (R. at 308.) She stated that she was able to sweep floors and is able to lift up to five or ten pounds with her right hand. (R. at 309.) She also testified to having numbness in both of her legs and said she could

not walk one block without having to stop and catch her breath. (R. at 310.) Nevels said she has slight pain and swelling in her legs and feet four or five times a month, but is more bothered by numbness and a limited range of motion. (R. at 311.) She stated that she has a hard time turning, bending over or picking up objects. (R. at 312.)

Nevels asserted that she is able to dress herself and is able to bathe herself by sitting on a stool in her bathtub. (R. at 316.) Nevels testified that her daughter, niece and two friends help her with such tasks as laundry, cleaning the house, and going to the store, though Nevels is able to walk out of the house by herself. (R. at 316-17.) Nevels contended that she is able to dust, re-arrange food items on a shelf, and "take a small garbage to the dumpster." (R. at 319-20.) Nevels stated she drinks occasionally, having approximately "a beer or something" over a holiday or when socializing. (R. at 326.)

### 2. *Medical Evidence*

#### a. **Diagnosis and Treatment of COPD**

Nevels first sought treatment for respiratory symptoms on July 3, 2004, when she was admitted to the Mercy Hospital Emergency Room with a chronic, productive cough and breathing problems. (R. at 161-73.) She was diagnosed with pneumonia and prescribed Albuterol, an inhalant. (R. at 169.)

Subsequently, Nevels had pulmonary testing performed at Mercy Hospital and Medical Center on February 17, 2006, which showed small airway obstruction, air trapping and decreased gas transfer and diffusion capacity. (R. at 199.)

However, the forced volume capacity ("FVC"), forced expiratory volume per one second ("FEV1"), FEV1/FVC and functional residual capacity ("FRC") tests were normal. *Id.* After these tests, Nevels was diagnosed with COPD. (R. at 178.) On April 2, 2006, Nevels was admitted to the Emergency Room at St. Bernard Hospital, where she was diagnosed as having viral symptoms, asthma symptoms and bronchitis. (R. at 201.) She continues to treat her breathing problems with three inhalers, including Albuterol, Advair and Combivent. (R. at 302-03.)

### b.     **Diagnosis, Treatment and Evaluations of Thrombocytosis**

Nevels was admitted to Loretto Hospital on March 4, 2003 for alcohol and substance detoxification. (R. at 123-24.) Blood tests showed she also had thrombocytosis, a condition that causes an increase in platelets in the blood. *Id.* On September 17, 2003, Nevels was examined by Dr. Peter Baile on behalf of the Bureau of Disability Determination Services. (R. at 133.) Dr. Baile acknowledged Nevels' prior diagnosis of thrombocytosis but stated she was asymptomatic at the time of the examination. *Id.* Dr. Baile indicated a higher blood pressure in her left arm than right— 140/90 in the right, 150/110 in the left. (R. at 134.) Dr. Baile noted that she has a full range of motion in her joints, could walk normally, and her ability to grip with her fingers and hands was "unimpaired." (R. at 135.) A progress note from a June 1, 2004 visit to the Mercy Hospital Hematology/Oncology Unit indicated that Nevels complained of "weakness at all times," "numbness in hands and feet," and an "early morning feeling of decreased circulation in extremities." (R. at 184.) In June, 2005, Dr. Submaranian prescribed Hydroxyurea for Nevels'

thrombocytosis. (R. at 114.) On August 29, 2006, Dr. Submaranian began administering chemotherapy to Nevels as treatment for the disorder. (R. at 272.) He indicated that Nevels needs to be seen by a hematologist monthly. *Id.*

Dr. Gerald Cooke completed a residual functional capacity ("RFC") report on April 7, 2006 at Mercy Hospital. (R. at 178.) In addition to Nevels' prior diagnosis of essential thrombocytosis and COPD, Dr. Cooke stated that Nevels suffered from depression. *Id.* He noted her prognosis was "fair to good." *Id.* Dr. Cooke reported Nevels' symptoms as "generalized aching", "mild fatigue", and "occasional shortness of breath", and stated that Nevels' symptoms would "occasionally" interfere with concentration and render her "incapable of even 'low stress' jobs." (R. at 178-79.) Dr. Cooke wrote in the report that Nevels was able to lift under ten pounds frequently but could "never" lift weight of ten pounds or more, and that she should "never" twist, stoop, crouch climb ladders or climb stairs. (R. at 181.) He asserted that she was able to grasp and turn objects and perform fine manipulations with the fingers on her right hand about 90 percent of the workday, but only 10 percent of the workday for her left hand and fingers. (R. at 182.) He indicated that the earliest date these symptoms and limitations occurred was January of 2006. *Id.*

### c. Medical Expert's Testimony

The medical expert ("ME"), Dr. Ernest Mond, testified at the hearing. The ME examined pulmonary function studies performed on Nevels on February 17, 2006 which showed "changes compatible with" small airway obstruction and COPD. (R. at 328.) The ME accepted the diagnosis of COPD and opined that Nevels'

smoking produced the condition and that her breathing may improve if she quit smoking. (R. at 329.)

Additionally, the ME stated that he believed Nevels' COPD was caused by her smoking, not asthma or another condition, because her medical records showed small airway obstruction, not bronchial obstruction, and gas transfer and arterial oxygen saturation were at normal levels. (R. at 333-34, 340.) He referred to her breathing condition as "chronic smoker's bronchitis" and stated it was the cause of Nevels' COPD. (R. at 340.)

The ME also testified that the record indicated Nevels had thrombocytosis, an increase in platelets in the blood that causes clotting. (R. at 329-30.) However, the ME emphasized that thrombocytosis caused no limitations in people who had the condition, stating "it doesn't cause symptoms." (R. at 331.) Instead, the ME opined that Nevels' symptoms of fatigue, weakness and decreased sensation in her fingers, wrists and feet could only be caused by neuropathy. *Id.* The ME stated the symptoms "could be a sequence of alcohol." *Id.* He reported that he based this finding on the fact that Nevels had a history of alcohol and substance abuse that required detoxification in 2003 and that her thrombocytosis was asymptomatic at a medical examination in September 17, 2003. (R. at 332.)

When questioned by Nevels' attorney, the ME reaffirmed his opinion that Nevels' symptoms were caused by peripheral neuropathy but admitted that there was "not enough data here really for me to give you a definitive opinion." (R. at 336.) The ME also reiterated his opinion that chronic alcohol use was the likely

7

cause of what he termed neuropathy. He asserted that although other conditions like diabetes and multiple sclerosis were capable of producing Nevels' symptoms, he saw nothing in the record that indicated the presence of these other potential causes. (R. at 338.) When asked if thrombocytosis caused any of Nevels' symptoms, the ME stated the condition was "an incidental finding," and that he was not aware of any medical literature that listed tingling and weakness of the hands and feet as a symptom of thrombocytosis. (R. at 339.) The ME indicated that Nevels had responded well to medication, which had reduced her platelet count from 1,600,000 to between 700,000-800,000, with 400,000 being normal. *Id.* The ME testified he could not accept Dr. Cooke's description in his RFC report of Nevels' limitations without more tests. (R. at 341.)

### 3. *Vocational Expert's Testimony*

The ALJ asked the Vocational Expert ("VE"), Michelle Peters, to identify jobs which could be done by a hypothetical person of Nevels' age, education, and past relevant work experience, who could do the following activities: lift 20 pounds occasionally and ten pounds frequently; sit frequently and stand or walk occasionally; occasionally bend, stoop, crouch, balance and climb ramps and stairs, but never climb ladders, ropes or scaffolds; concentrate and maintain persistence and pace for 90% of the work day. (R. at 345.) The hypothetical person should not work at unprotected heights or with dangerous machinery and should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. *Id.* The VE responded that there were approximately 1,800 assembly positions, 1,000 hand-

packaging positions and 900 order clerking positions available for such a person, for a total of 3,700 potential employment options in the Chicago metropolitan area. (R. at 346-47.)

The ALJ then asked the VE about a claimant who had the same limitations as in the prior scenario but also could perform bi-lateral manual activity no more than 75 percent of the workday. The VE answered that this would eliminate the assembly and packaging positions, leaving only the 900 clerking positions. (R. at 347.) Finally, the ALJ asked about a claimant with the same limitations as in the previous hypothetical, except that the claimant would now only be able to concentrate for 80 percent of the working day because of coughing. (R. at 348.) The VE answered that this limitation would remove even the clerking positions. *Id.*

## C. ALJ Decision

The ALJ found that Nevels' COPD was a severe impairment, causing more than minimal restrictions on her ability to perform work-related activities. (R. at 16.) However, the ALJ concluded that Nevels' COPD did not satisfy the criteria of listing 3.02 "because the pulmonary function test showed that the FVC, the FEV1 and the FEV1/FVC were normal." *Id.* The ALJ found that the objective medical tests in the record supported the ME's position and not the "extreme limitations" in working ability Dr. Cooke determined were present. (R. at 17.)

Further, the ALJ indicated that Nevels' thrombocytosis was non-severe, stating, "[c]laimant alleges her ability to perform activities is limited due to pain in the legs and cramping of the hands. However, Dr. Mond, the medical expert,

testified that thrombocytosis does not cause such difficulties or limitations." *Id.* The ALJ elaborated, "[w]hile it is true that the record is replete with references to the fact the claimant was diagnosed with thrombocytosis; however, as pointed out by Dr. Mond, the finding is incidental; there is no evidence that her condition was contributory to her claimed limitations." (R. at 18.)

The ALJ found that Nevels was less than credible in her testimony on the ways in which her COPD and alleged pain and weakness in her hands and legs limited her ability to work. (R. at 18.) The ALJ decided that "high-level limitation is difficult to justify from the record" and that no medical basis existed for the "extreme symptoms or limitations" claimed by Nevels. (R at 18-19.)

The ALJ determined that Nevels has the residual functional capacity ("RFC") to perform "less than the full range of sedentary work, but not significantly less." (R. at 20.) *Id.* The ALJ found Nevels was able to walk or stand occasionally, sit frequently, carry 20 pounds occasionally and ten pounds frequently, occasionally bend, stoop, crouch, kneel, crawl, balance, climb ramps and stairs, and maintain concentration and pace 90 percent of the workday. *Id.* Further, the ALJ found that Nevels is unable to climb ladders, ropes or scaffolds, work at unprotected heights or with dangerous machinery, or in an environment where she would be exposed to concentrated fumes, odors, dust, gases, or poor ventilation. *Id.*

The ALJ stated that Nevels' limitations precluded her from performing past relevant work including work as a loader for UPS, a housekeeper, and a food server. *Id.* However, the ALJ relied on the VE's answer to his first hypothetical to conclude

that Nevels had the RFC to perform one of 1,800 assembling positions, 1,000 packing positions, and 900 order clerk positions.[1] (R at 21.) Thus, the ALJ found that Nevels had not been under a "disability" as defined in the Social Security Act since the date her application was filed because she was capable of performing a significant amount of jobs in the local economy. (R. at 21-22.)

### III. <u>DISCUSSION</u>

**A.    <u>ALJ Legal Standard</u>**

A person is disabled within the meaning of the Social Security Act if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine if a claimant is disabled, the ALJ considers five questions in order: (1) Is the claimant presently employed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one the specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.,* 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than step 3, precludes a

---

[1]The ALJ opined that 900 jobs would not be a significant number of positions as a matter of law. (R. at 350.)

finding of disability. *Id*. The claimant has the burden of proof at steps 1-4. *Id*. If the claimant upholds this burden, the burden shifts to the Commissioner to show the claimant is able to perform other work existing in significant numbers in the economy. *Id*.

## B.    Judicial Review

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by "substantial evidence," 42 U.S.C. § 405(g), which means "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence must be more than a scintilla but may be less than a preponderance. *Id*. This Court may not substitute its judgment for the ALJ's by reevaluating facts, reconsidering evidence or making credibility determinations. *Id*.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [his] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). An ALJ may not "select and discuss only evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing his conclusions, and must adequately articulate his analysis so that we can

follow his reasoning."). If the ALJ dismisses without consideration entire lines of evidence contrary to the ruling, the case may be remanded back to the agency. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

## C.   Analysis

Nevels argues the ALJ erred when he found Nevels' thrombocytosis was a "non-severe" impairment because the ALJ did not properly consider all relevant medical and testimonial evidence in favor of Nevel's position. Specifically, Nevels argues that (1) the ALJ relied on the ME's incorrect testimony that thrombocytosis causes no symptoms, failing to address contradictory medical literature in the record; (2) the ALJ improperly ignored or discounted medical reports from treating physicians; and (3) the ALJ improperly discredited Nevels' testimony. Each argument will be addressed below.

### 1.   The ALJ Failed to Consider Medical Literature in the Record

Nevels argues that the ALJ committed a clear legal error when he "accepted the testimony of Dr. Mond [the ME], without making any mention whatsoever to the fact that his testimony is contradicted by the medical literature concerning symptoms of thromobocytosis." Memorandum in Support of Plaintiff's Motion for Summary Judgment [hereinafter Pl.'s Mem.] at 11-12 [Doc. No. 21]. Nevels points out that the ME testified that thrombocytosis does not cause any of the symptoms or limitations that Nevels alleged (i.e. fatigue, weakness, and pain/ numbness in her legs and hands). *Id.* at 10. However, Nevels asserts that this testimony is at odds with medical literature that she submitted after the hearing, but while the

record was still open. Nevels indicates that she submitted an excerpt from a learned treatise, *The Merck Manual of Diagnosis and Therapy*, which lists "weakness" and "parathesis of the hands and feet" as "the most common symptoms" of thrombocytosis. *Id.* at 10, 12. Nevels also submitted an excerpt from an article published on the Leukemia and Lymphoma Society website that states,"[m]any patients with essential thrombocythemia [thrombocytosis] do not have any signs or symptoms. Other patients may have redness of the skin, burning, or throbbing pain in their feet and hands." *Id.* Nevels underscores that the ME confirmed his mistaken belief that thrombocytosis cannot cause the symptoms that Nevels described when he stated that he was not aware of any medical literature that indicates that tingling of the hands and feet and weakness are possible symptoms of thrombocytosis. Plaintiff's Reply Memorandum [hereinafter Pl.'s Reply] at 3. [Doc. No. 25].

Nevels argues that the ALJ relied on the ME's incorrect testimony and "rejected outright" that thromobcytosis could cause any of Nevels symptoms, without mention of contradictory objective medical literature in the record. *Id.* at 10. As such, Nevels asserts that the ALJ improperly ignored a line of evidence in favor of Nevels' position without explanation. *Id.* at 11-12 (citing *Godbey v. Apfel*, 238 F.3d 803, 807 (7th Cir. 2000) and SSR 96-8p). Nevels emphasizes that the ALJ's reliance on the ME's incorrect testimony without explanation was harmful error because it negatively influenced the ALJ's assessment of medical reports and

Nevels' credibility. Accordingly, Nevels argues that the case should be remanded back to the Agency for another hearing. Pl.'s Reply at 6 [Doc. No. 6].

The Commissioner admits that the ME testified that thrombocytosis causes no symptoms or limitations and that the submitted medical literature indicates that some of the symptoms Nevels described can be caused by thrombocytosis. Defendant's Memorandum in Support of the Commissioner's Decision [hereinafter Def.'s Mem.] at 8-9 [Doc. No. 24]. Likewise, the Commissioner does not deny that the ALJ relied on the ME's testimony and that the ALJ failed to discuss the contradictory medical literature on the record in his decision. However, the Commissioner argues that the ME's testimony is consistent with "portions of the literature" submitted by Nevels because the literature states that "[m]any patients with essential thrombocytosis do not have any signs or symptoms." *Id.* at 9. Further, the Commissioner contends that the ME's testimony is not demonstrably incorrect because the ME also testified that Nevels' 2003 diagnosis of thrombocytosis was incidental and occurred when she was symptom-free. *Id.* The Commissioner concludes, "[i]n this case, the record is clear that Plaintiff was one of the 'many patients with essential thrombocytosis' who 'do not have any signs or symptoms.'" Def.'s Mem. at 9 [Doc. No. 24].

An ALJ is required to "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, based upon consideration of "all the relevant evidence." *Herron*, 19 F.3d at 333; *see also* Social Security Ruling ("S.S.R.") 96-8p ("The RFC assessment must be based on *all* of the relevant evidence in the

case record"). The ALJ cannot ignore a line of evidence in favor of a claimant's position without explanation. *See Godbey v. Apfel*, 238 F.3d 803, 807 (7th Cir. 2000); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Herron*, 19 F.3d at 333 (noting that an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion"). If an ALJ dismisses a line of evidence contrary to the ruling without adequate articulation, the case should be remanded back to the Agency. *Villano*, 556 F.3d at 563. Further, an ALJ's decision can only be affirmed if substantial evidence exists to support the actual reasoning articulated by the ALJ. *See Motor Vehicle Mfrs. Assn of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("[T]he courts may not accept appellate counsel's in *post hoc* rationalizations for agency action . . . It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (citations omitted).

It is undisputed that the ALJ relied on the ME's statements that thrombocytosis does not cause the kinds of symptoms that Nevels alleged and that the ALJ did not discuss the contradictory medical literature submitted by Nevels. As such, the ALJ did not build an "accurate and logical bridge" and remand is necessary. *See Villano*, 556 F.3d at 563; *Herron*, 19 F.3d at 333. The Commissioner's argument that the ME's statements are consistent with portions of the medical literature is unavailing. The ME specifically testified that thrombocytosis does not cause the kinds of symptoms and limitations that Nevels describes and that he was unaware of any literature that states otherwise. The Commissioner's other argument, that Nevels could be one of the many patients with thrombocytosis that

does not have signs or symptoms based on the record, was not articulated by the ALJ and cannot be considered at this stage by this Court. *See Villano*, 556 F.3d at 563, *citing Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) ("[T]he ALJ (not the Commissioner's lawyers) must 'build an accurate and logical bridge from the evidence to her conclusion.'"); *see also Skinner*, 478 F.3d at 841 ("Regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.") (citations omitted).

2.    **The ALJ Failed to Properly Consider Medical Reports**

Next, Nevels argues the ALJ improperly ignored or discounted medical reports from two of her treating physicians: a June 2004 progress note from the Hematology/Oncology Clinic at Mercy Hospital and an RFC report from Dr. Cooke.

**June 2004 Progress Note**:

Nevels asserts that the ALJ erred when he did not discuss the June 2004 progress note from the Hematology/Oncology Clinic at Mercy Hospital that states that Nevels' medical history is "significant" for thrombocytosis and that Nevels stated she had "weakness at all times," "numbness in [her] feet and hands" and an "early morning feeling of decreased sensation or circulation in extremities." Pl.'s Mem. at 11 [Doc. No. 21].

The Commissioner does not deny that the ALJ failed to mention the June 2004 Progress note in his decision. However, the Commissioner argues "this note is

the only treatment note cited by Plaintiff documenting that she ever mentioned any of these symptoms during treatment." Def.'s Mem. at 10 [Doc. No. 24]. Further, the Commissioner contends that the progress note should be given little weight because "[a] one-time, isolated complaint of numbness, weakness, and reduced sensation in the early morning hardly demonstrates that Plaintiff had a severe impairment for 12 months, which she was required to show in order to be entitled to disability." *Id.* (citing 20 C.F.R. § 404.1505(a)).

The Commissioner's argument that the progress note should be given little weight because it is a one-time event is not persuasive. Although the ALJ does not have to discuss every piece of evidence, he must discuss evidence that directly contradicts his statements and explain why it is discounted. *See Kasarsky v. Barnhard*, 335 F.3d 539, 543 (7th Cir. 2003). The ALJ states that there is "no objective evidence" which supports Nevels' assertions without mention of this progress note. The ALJ may have believed that the progress note did not constitute sufficient evidence as it is a one-time event as the Commissioner contends, but the ALJ did not articulate that in his opinion. This Court cannot speculate on what the ALJ may have thought based on the Commissioner's *post hoc* rationalizations. *See Motor Vehicle Mfrs. Assn of U.S., Inc.*, 463 U.S. at 50; *Villano*, 556 F.3d at 563; *Skinner*, 478 F.3d at 841. Because the ALJ failed to discuss objective medical evidence contrary to the ruling without adequate articulation, the case should be remanded back to the Agency. *Villano*, 556 F.3d at 563; *Herron*, 19 F.3d at 333

(noting that an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion").

**Dr. Cook's RFC report**:

Nevels points out that the record contains an RFC report from Nevels' treating physician, Dr. Cooke, which indicates that Nevels suffers from thrombocytosis and that Nevels would have "significant limitations with walking, standing, as well as reaching, handling and fingering (none of which can be attributed to her respiratory problems)." Pl.'s Mem. at 10-11 [Doc. No. 21]. Nevels argues that because the ALJ relied on the ME's incorrect assertion that thrombocytosis does not cause the signs and symptoms that Nevels alleges, the ALJ improperly discounted Dr. Cook's RFC report. According to Nevels, "[i]mplicitly, if not explicitly, when the ALJ found Dr. Cooke's RFC report to be unreliable, it was in part because he assumed the correctness of Dr. Mond's testimony that there was no evidence that her thrombocytosis condition was contributory to her claimed limitations." *Id.* at 13. Nevels contends that this is evidenced by the ALJ's statement that Dr. Mond's opinion "'aligns well with the objective medical evidence while the opinion of Dr. Cooke is askew with that evidence.'" *Id.*

The Commissioner responds that the ALJ reasonably weighed Dr. Cooke's RFC report and rejected it "due to a lack of support and its inconsistency with the record." Def. Mem. at 12 [Doc. No. 24]. Further, the Commissioner argues that "the ALJ considered Dr. Cooke's extreme opinion, and reasonably gave it little weight, because it was undoubtably "based on the subjective complaints of the claimant"(Tr.

19)." *Id.* at 11. The Commissioner supports this by citing *Diaz v. Chater*, which holds that an ALJ may give less significance to a portion of a doctor's report which is based on the claimant's own statements about her functional restrictions. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).

While an ALJ reasonably can give less weight to portions of medical reports based solely on subjective complaints, the question remains whether the ALJ discounted Dr. Cooke's report and Nevels' statements because the ALJ was under the mistaken belief that thrombocytosis cannot cause the types of symptoms and limitations described based on the ME's testimony. Further, as discussed earlier, this Court cannot know whether the ALJ considered favorable evidence supporting Nevels claims such as the 2004 June Progress note and the medical literature because these lines of evidence were not discussed in the ALJ's decision. Accordingly, this Court cannot properly assess whether the ALJ's rejection of Dr. Cooke's report was reasonable. Therefore, this Court finds that the matter should be remanded for further proceedings consistent with this opinion.

The Commissioner's remaining arguments cannot be considered by this Court because they were not articulated by the ALJ in his decision. The Commisioner argues that the ALJ could have reasonably given Dr. Cooke's report little weight because the report states that the earliest applicable date for the symptoms and limitations he noted was January 2006, not the April 2003 date Nevels claims her disability began. Def. Mem. at 12 [Doc. No. 24]. Moreover, the Commissioner argues that although Dr. Cooke's report describes Nevels' symptoms as "generalized

aching," "mild fatigue," and "occasional shortness of breath," it does not mention weakness, numbness, or throbbing pain in the feet and hands – the most common symptoms of thrombocytosis. *Id.* This Court is not permitted to accept these *post hoc* rationalizations made by the Commissioner. *See Motor Vehicle Mfrs. Ass'n of U.S.,* 463 U.S. at 50; *Steele v. Barnhart,* 290 F.3d at 941.

### 3.  The ALJ Erred in His Determination of Nevels' Credibility

Lastly, Nevels argues that the ALJ erred in discrediting Nevels' testimony. The ALJ's credibility finding is afforded "considerable deference" and will not be overturned unless it is "patently wrong." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006). However, the ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations, 20 C.F.R. § 404.1529(c), and must justify the credibility finding with specific reasons supported by the record. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). The Seventh Circuit has held that "a lack of medical evidence alone is an insufficient reason to discredit testimony." *Id.; see also* 20 C.F.R. § 404.1529 (c)(2) (The Social Security Agency "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Further, the Seventh Circuit has cautioned ALJs to consider the "difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week." *Carradine,* 560 F.3d at 755-56.

Nevels argues that the ALJ's credibility determination is flawed because: (1) the ALJ incorrectly believed that thrombocytosis cannot cause the kinds of symptoms Nevels alleged based on the ME's testimony; and (2) the purported "inconsistencies" in Nevels testimony are not supported by substantial evidence.

## 1. **Error based on ME's testimony**

Nevels argues that the ALJ incorrectly found Nevels' testimony not credible because of the ALJ's mistaken belief that thrombocytosis cannot cause the symptoms Nevels describes based on the ME's testimony. Nevels contends that the ALJ acknowledged that Nevels testifies "that her ability to perform activities across the board was limited by fatigue, weakness, and pain/numbness in both her legs and hands." Pl.'s Mem. at 10 (citing (R. at 16.)). However, Nevels contends that the ALJ rejected outright that thrombocytosis could be a possible cause/ contributor to any of Nevels' symptoms, when he stated, "Dr. Mond, the medical expert, testified that thrombocytosis does not cause such difficulties or limitations." Pl.'s Mem. at 10 [Doc. No. 21] (citing (R. at 16.)). Thus, Nevels says, because of the ALJ's incorrect understanding of thrombocytosis, the ALJ's view of Nevels' credibility is "unfairly tainted." Pl.'s Reply at 5 [Doc. No. 25].

The Commissioner responds that the ALJ "considered Plaintiff's claim that she had left-hand and leg numbness with swelling in her hands and feet four or five times per month, but reasonably found 'no objective medical basis for such extreme symptoms of limitations.'" Def.'s Mem. at 13 [Doc. No. 24]. The Commissioner elaborates, "Plaintiff attempts to support her claims with medical literature. What

Plaintiff fails to appreciate or demonstrate is that the symptoms she alleges are not supported by any actual medical evidence." *Id.* at 14. The Commissioner concludes, "[o]nce again, the medical record is clear that Plaintiff simply never complained to physicians of the extreme symptoms she alleged at her hearing." *Id.*

As discussed earlier, the question remains whether the ALJ discounted Nevels' statements because the ALJ was under the mistaken belief that thrombocytosis cannot cause the types of symptoms and limitations described based on the ME's testimony. Further, because the ALJ did not discuss favorable evidence supporting Nevels' claims such as the 2004 June Progress note and the medical literature, this Court cannot know whether the ALJ properly considered this evidence when making the claim that no objective medical evidence supported Nevels allegations. Accordingly, this Court finds that the matter should be remanded. On remand the agency must reassess Nevels' credibility in light of all the evidence of record. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)

## 2. **Purported "inconsistencies" are not supported by substantial evidence**

Nevels next argues that the other reasons the ALJ offered for finding Nevels less than credible are not supported by substantial evidence. First, the ALJ stated, "[i]n her written submissions, the claimant even indicates that she is unable to stand for a shower and unable to cook standing, but this is contrary to what she testified to at the hearing." (R. at 18.) Second, the ALJ reported that Nevels had stated in her written submission that she was unable to open a jar, file papers or

write too much because of hand cramping, but she did not testify to these limitations at the hearing. (*Id.*)

Nevels argues that "there is no actual or material conflict" between her written submissions and what she testified to at the hearing. Pl.'s Mem. at 15 [Doc. No. 21]. Nevels says that she testified that she could shower, but had to sit on a stool to do so; therefore, that is not inconsistent with the written submission that she was "unable to stand in the shower." *Id.* at 14. Nevels next points out that she testified that she was unable to pick up a gallon of milk with her left hand and could probably "just move stuff" with that hand and therefore; this testimony is also not at odds with the cooking limitations she described in her written submission. *Id.* at 14-15. Additionally, Nevels argues that the fact that she did not orally testify that she was unable to open a jar, file papers or write too much because of hand cramping is not evidence of an inconsistency with her written submission or evidence that her credibility should be doubted. *Id.* at 14-15. Thus, Nevels asserts, the ALJ failed to meet his burden to provide sufficient reason for discounting an applicant's testimony. *Id.* at 14 (citing *Steele v. Barnhart*, 290 F.3d at 941 and SSR 96-7p (credibility determination must contain not only specific reasons for the finding, but also be supported by the evidence in the case).

The Commissioner does not directly dispute Nevels' arguments, but states, "even assuming the inconsistencies cited by the ALJ do not support an adverse credibility finding, the ALJ cited other appropriate factors to support his finding"

(i.e. there is "no objective medical basis" for Nevels' alleged symptoms). Def.'s Mem. at 13 [Doc. No. 24].

Because the ALJ appears to have mischaracterized the record in identifying purported "inconsistencies", and because the ALJ has not provided sufficient reason for discrediting Nevels' testimony, remand is warranted. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)(remanding where ALJ mischaracterized record); *Terry v. Astrue*, 580 F.3d at 477.

In the her original motion, Plaintiff requests reversal or in the alternative remand. In her Reply, however, Plaintiff only requests remand. Indeed, the Court concludes that outright reversal of the ALJ's decision is not appropriate, because there is evidence in the record that could support a finding of non-disability. *See McPheron v. Barnhart*, No. 02 C 6261, 2003 WL 22956395, at *17 (N.D. Ill., Dec. 12, 2003). However, a remand is necessary to allow the ALJ to more fully develop the logical bridge between the evidence and his conclusions. *See id.*

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants in part Nevels' Motion for Summary Judgment [Doc. No. 20], denies the Commissioner's Motion for Summary Judgment [Doc. No. 23], and finds this matter should be remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

**ENTERED:**

April 7, 2011

**DATE:** _____

**HON. MARIA VALDEZ**
**United States Magistrate Judge**